UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAP-PING CHEN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>BMW OF NORTH AMERICA, LLC,<br><br>　　　　Defendant. | Case No. 21-cv-03531-DMR<br><br>**ORDER ON MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. No. 13 |

On March 23, 2021, Plaintiff Lap-ping Chen filed this case in the San Francisco County Superior Court, alleging claims for breach of warranty against Defendant BMW of North American, LLC ("BMW NA"). [Docket No. 1-1 ("Compl.").] BMW NA removed the case to this court on May 11, 2021. [Docket No. 1.] BMW NA now moves to compel arbitration of all claims. [Docket Nos. 13 ("Mot."), 17 ("Reply").] Chen opposes. [Docket No. 16 ("Opp.").] This motion is suitable for determination without oral argument pursuant to Civil L.R. 7-1(b).

For the reasons stated below, the motion is denied.

**I.    BACKGROUND**

　　**A.    Allegations**

Chen is an individual residing in San Francisco, California. Compl. ¶ 1. On November 4, 2020, Chen leased a new 2021 BMW X5 cDrive 40i from non-party Stevens Creek BMW. *Id.* ¶ 8; *id.*, Ex. 1 ("Lease Agreement"); Docket No. 13-1, Declaration of Jennifer Shum ("Shum Decl.") ¶ 3; *id.*, Ex. A. He alleges that the vehicle was subject to both express and implied warranties. Compl. ¶¶ 9, 15, 18, 31-32. Chen claims that the vehicle came with "serious defects and nonconformities to warranty and developed other serious defects and nonconformities to warranty including, but not limited to various electrical and structural defects." Compl. ¶ 10. He brought the vehicle to BMW

repair facilities on several occasions, but BMW NA was "unable to conform Plaintiff's vehicle to the applicable express and implied warranties after a reasonable number of attempts." *Id.* ¶ 18. According to Chen, BMW NA failed to replace the vehicle or refund his money. *Id.* ¶¶ 20-21.

Chen brings claims for breach of warranty under the federal Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, and California's Song-Beverly Consumer Warranty Act, Cal. Civil Code § 1790 *et seq.* Among other remedies, he seeks rescission of the lease contract, restitution, and civil penalties.

### B.  Lease Agreement

The Lease Agreement between Chen and Stevens Creek BMW identifies the parties to the agreement as follows:

> **Agreement to Lease.** This Motor Vehicle Lease Agreement ("Lease") is entered into between the lessee and co-lessee ("Lessee") and the lessor ("Lessor") named above [Stevens Creek BMW]. Unless otherwise specified, "I," "me," and "my" refer to the Lessee and "you" and "your" refer to the Lessor or the Lessor's assignee. . . . "Assignee" refers to BMW Financial Services, NA, LLC ("BMW FS") or, if this box is checked [x] to Financial Services Vehicle Trust ["FSVT"]. BMW FS will administer this Lease on behalf of itself or any assignee.

Lease Agreement § 2. According to BMW NA, FSVT is a subsidiary of BMW FS, which is in turn a wholly-owned subsidiary of BMW NA. *See* Docket No. 13-1, Declaration of Tyler Weight ("Weight Decl.") ¶¶ 2-3.[1] The Lease Agreement contains an arbitration provision, which in relevant part provides:

> **NOTICE:** Either you or I may choose to have any dispute between us decided by arbitration and not in a court or by jury trial.
>
> . . .
>
> **"Claim"** broadly means any claim, dispute or controversy . . . between me and you or your employees, officers, directors, affiliates, successors, or assigns, or between me and any third parties if I assert a Claim against such third parties in connection with a Claim I assert against you, which arises out of or relates to my credit application, lease, purchase or condition of this Vehicle, this Lease or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Lease). Any Claim shall, at your or my election, be resolved by neutral, binding

---

[1] Tyler Weight identifies himself as the Finance Systems Manager for BMW FS. Weight Decl. ¶ 1.

arbitration and not by a court action.

*Id.*

BMW NA moves to compel arbitration of Chen's claims under the arbitration agreement.

## II. LEGAL STANDARDS GOVERNING ENFORCEMENT OF ARBITRATION AGREEMENTS

The Federal Arbitration Act ("FAA") governs written arbitration agreements affecting interstate commerce.[2] *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111-12 (2001). Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Enacted for the purpose of enforcing written arbitration agreements according to their own terms, the FAA embodies "the basic precept that arbitration 'is a matter of consent, not coercion.'" *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010) (quoting *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)). "Whether enforcing an agreement to arbitrate or construing an arbitration clause, courts and arbitrators must 'give effect to the contractual rights and expectations of the parties.'" *Id.* at 682 (quoting *Volt*, 489 U.S. at 479). Section 4 of the FAA ensures that "private agreements to arbitrate are enforced according to their terms," *Stolt–Nielsen*, 559 U.S. at 682 (quoting *Volt*, 489 U.S. at 479), by expressly authorizing a party to an arbitration agreement to petition a United States district court for an order directing that "arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Courts apply ordinary state law principles governing the formation of contracts to evaluate such claims. *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1072 (9th Cir. 2007), *overruling on other grounds recognized by Ferguson v. Corinthian Coll., Inc.*, 733 F.3d 928, 937 (9th Cir. 2013). Like other contracts, arbitration agreements "may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 66 (2010) (quotation omitted).

"By its terms, the [FAA] 'leaves no place for the exercise of discretion by a district court,

---

[2] The parties do not dispute that the FAA is the relevant authority for this dispute. *See* Lease Agreement § 28 ("[T]his Arbitration Clause and any arbitration hereunder shall be governed by the Federal Arbitration Act . . . .").

3

but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 218 (1985)) (emphasis in original). Therefore, the court's role under the FAA is limited to determining "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp.*, 207 F.3d at 1130 (citations omitted).

**III.   DISCUSSION**

Chen does not dispute that the arbitration provision in the Lease Agreement is valid and he does not argue that the subject matter of his claim falls outside the scope of the arbitration clause. Instead, he argues that BMW NA cannot enforce the arbitration provision because it is not a signatory to the Lease Agreement. BMW NA contends that it can enforce the arbitration clause as a third-party beneficiary to the Lease Agreement or, in the alternative, under the doctrine of equitable estoppel. Both arguments are analyzed under California law since "a litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013).

**A.   Third-Party Beneficiary**

Generally, the right to compel arbitration "may not be invoked by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration." *Britton v. Co-op Banking Grp.*, 4 F.3d 742, 744 (9th Cir. 1993); *see also United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960) ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."). In some circumstances, however, "nonsignatories can enforce arbitration agreements as third party beneficiaries." *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006); *see* Cal. Civ. Code § 1559 ("A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it."). In order to compel arbitration as an intended third-party beneficiary, the nonsignatory must show that "the contract reflects the express or implied intention of the parties to the contract to benefit the third party." *Klamath Water Users Protective Ass'n v.*

4

*Patterson*, 204 F.3d 1206, 1211 (9th Cir. 1999), *opinion amended on denial of reh'g*, 203 F.3d 1175 (9th Cir. 2000). By contrast, an incidental beneficiary of an agreement "acquires no right" against the parties to that agreement. *Id.* at n. 2 (internal quotation marks omitted) (quoting Restatement (Second) of Contracts § 315). The nonsignatory bears the burden of proving that it is an intended third-party beneficiary. *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1234 (9th Cir. 2013).

BMW NA points out that the arbitration clause broadly defines "Claim" to mean "any claim, dispute or controversy . . . between me and you or your employees, officers, directors, *affiliates*, successors, or assigns . . . ." Lease Agreement § 38 (emphasis added). "You," as defined in the Lease Agreement, refers to Stevens Creek BMW or FSVT. *Id.* § 2. BMW NA contends that it is an "affiliate" of FSVT because FSVT is a subsidiary of BMW FS, which is in turn a wholly-owned subsidiary of BMW NA. *See* Lease Agreement § 2; *see also* Weight Decl. ¶¶ 2-3. Thus, BMW NA argues, the arbitration provision encompasses Chen's claims against BMW NA as an affiliate of FSVT. Chen responds that BMW NA cannot invoke the arbitration agreement because that provision explicitly states that only "you or I" (i.e., Stevens Creek BMW/FSVT or Chen), can choose to send any disputes to arbitration. *See* Lease Agreement § 38 ("Either *you or I* may choose to have any dispute between us decided by arbitration and not in a court or by jury trial." (emphasis added)); *id.* ("Any Claim shall, at *your or my* election, be resolved by neutral, binding arbitration and not by a court action." (emphasis added)).

There are cases supporting both parties' construction of the Lease Agreement. Some courts have adopted BMW NA's position in cases involving nearly identical arbitration provisions. *See, e.g.*, *Rizvi v. BMW of N. Am. LLC*, No. 20-cv-00229-EJD, 2020 WL 2992859 (N.D. Cal. June 4, 2020) (holding that "BMW NA, as an affiliate of assignee FSVT, is entitled to enforce the arbitration provision"); *Fikhman v. BMW of N. Am. LLC*, 2019 WL 6721626 (C.D. Cal. Oct. 15, 2019) ("The plain language of the lease shows that Defendant is an intended beneficiary."); *Katz v. BMW of N. Am., LLC*, No. 19-cv-01553-KAW, 2019 WL 4451014 (N.D. Cal. Sept. 17, 2019) ("[BMW NA] has standing to enforce the arbitration clause as an affiliate of the Lessor's assignee."); *Reykhel v. BMW of N. Am. LLC*, No. 19-cv-01900-SK, 2019 WL 10056984 (N.D. Cal. Aug. 12, 2019) ("[BMW NA] is a third party beneficiary of the Lease Agreement with clear standing to enforce its arbitration

5

clause."). Other courts have found that similar arbitration clauses do not evince the parties' intent to benefit third parties. *See, e.g.*, *Almada v. BMW of N. Am., LLC*, No. 2021 WL 1156850, at *4 (C.D. Cal. Feb. 11, 2021) ("[T]here is no evidence that either Plaintiff or the Dealership intended BMW NA to be third-party beneficiary to the Contract."); *Nation v. BMW of N. Am., LLC*, 2020 WL 7868103 (C.D. Cal. Dec. 28, 2020) ("BMW NA proffers no evidence to suggest that the signatories of the contract intended to include BMW NA in the 'you or I' who may compel arbitration."); *Zamora v. BMW of N. Am., LLC*, 2020 WL 5219565 (C.D. Cal. July 8, 2020) ("The terms of the Lease Agreement do not show an intent to benefit BMW NA.").

Chen's authority is more persuasive. As an initial matter, the Lease Agreement never mentions BMW NA. *See Murphy*, 724 F.3d at 1234; *see also* Cal. Civ. Code § 1639 ("When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible . . . ."). While "a third party need not be expressly named or identified in a contract," a nonsignatory only qualifies as an intended beneficiary "if the [signatories] intended to benefit the third party and the terms of the contract make that intent evident." *Balsam v. Tucows Inc.*, 627 F.3d 1158, 1161 (9th Cir. 2010) (cleaned up). In this case, the only evidence BMW NA offers of such intent is the Lease Agreement's reference to "affiliates." It is not convincing that this broad term, standing alone, evinces an intent to benefit BMW NA.[3] *See Zamora*, 2020 WL 5219565, at *4 ("The Court is simply unpersuaded that the Agreement's vague reference to 'affiliates' reveals the signatories' intent to benefit BMW NA.").

Further, the term "affiliate" appears within the definition of "Claims" rather than the clause explaining who can enforce the arbitration provision. *See* Lease Agreement § 38. The Lease Agreement only states that "you" (defined earlier in contract to mean Stevens Creek BMW or its assignee FSVT) or "I" (Chen) can opt to arbitrate disputes. *See id.* §§ 2, 38. Thus, the language identified by BMW NA "refers to types of disputes between Plaintiff and the dealership that may be arbitrated, and does not demonstrate an intent to confer some direct benefit on BMW." *Jurosky v. BMW of N. Am., LLC*, 441 F. Supp. 3d 963, 975 (S.D. Cal. 2020); *see also Almada*, 2021 WL

---

[3] Relatedly, BMW NA does not offer any authority as to the meaning of "affiliate" or any argument as to how that definition applies to the various parent/subsidiary relationships at issue in this case.

1156850, at *4 (stating that the "Claims" definition "only identifies which claims may be arbitrated and what the subject matter of those claims may be. It does not define who may compel arbitration."); *Nation*, 2020 WL 7868103, at *3 ("BMW NA proffers no evidence to suggest that the signatories of the contract intended to include BMW NA in the 'you or I' who may compel arbitration.").

Finally, if the signatories intended to benefit BMW NA, they could have stated so directly.[4] Stevens Creek BMW explicitly defined "you" to mean both itself and FSVT, which shows that it knew how to confer the benefits of the Lease Agreement on nonsignatories. One rule of construction states that the "mention of one matter implies the exclusion of all others." *Steven v. Fid. & Cas. Co. of New York*, 58 Cal. 2d 862, 871 (1962). Since Stevens Creek BMW included FSVT in its definition of the parties, but did not mention BMW NA at all, that rule of construction leans against finding that BMW NA is a third-party beneficiary of the Lease Agreement. *See Murphy*, 724 F.3d at 1234 (concluding that a nonsignatory was not an intended third-party beneficiary where the contract at issue explicitly identified other third-party beneficiaries).

In sum, the court finds that BMW NA has not met its burden to show that it is an intended third-party beneficiary of the Lease Agreement.

**B.     Equitable Estoppel**

In the alternative, BMW NA seeks to compel under the doctrine of equitable estoppel, which "precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Comer*, 436 F.3d at 1101 (internal quotation marks and citation omitted). The doctrine reflects the principle that a signatory "cannot, on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory." *Goldman v. KPMG, LLP*, 173 Cal. App. 4th 209, 220 (2009) (internal quotation marks and citation omitted). Relevant here, a nonsignatory may invoke equitable estoppel to enforce an

---

[4] This is particularly true given the extent of litigation about this exact issue. BMW NA is clearly on notice that some courts have not adopted its position with respect to enforcing arbitration agreements between dealerships and customers. If the dealerships intended to benefit BMW NA, they have had ample opportunity to clarify any ambiguities in their agreements.

7

arbitration clause when "a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are intimately founded in and intertwined with the underlying contract." *Kramer*, 705 F.3d at 1128. "Because generally only signatories to an arbitration agreement are obligated to submit to binding arbitration, equitable estoppel of third parties in this context is narrowly confined." *Murphy*, 724 F.3d at 1229.

BMW NA argues that the court should apply the doctrine of equitable estoppel to compel Chen to arbitrate his claims. It asserts that Chen must rely on the Lease Agreement in order to assert his claims because the Lease Agreement "satisfies" Chen's standing to sue as a "buyer of consumer goods" under the Song-Beverly Act and the Magnuson-Moss Act. Mot. at 11-12; *see* Cal. Civ. Code § 1794(a) ("Any buyer of consumer goods. . . may bring an action . . . ."). In other words, the Lease Agreement proves that Chen purchased a consumer good, which is one element of a breach of warranty claim. This argument is tenuous at best. Although the Lease Agreement is proof that a consumer purchase occurred, Chen's standing to sue for breach of warranty does not inherently rely on the existence of the Lease Agreement. Thus, while the Lease Agreement is sufficient to show standing, it is not necessary. *See Kramer*, 705 F.3d at 1132 ("[While] Plaintiffs' claims presume a transaction involving a purchase of a Class Vehicle . . . . [they] do not . . . rely upon the existence of a Purchase Agreement."); *Soto v. Am. Honda Motor Co.*, 946 F. Supp. 2d 949, 956 (N.D. Cal. 2012) (rejecting a defendant manufacturer's equitable estoppel argument because "[the plaintiff] need not rely on the Installment Sale Contract to prove his purchase of the vehicle, or for the ultimate success of his claims"). Since Chen could bring breach of warranty claims against BMW NA even if the Lease Agreement did not exist, his claims arise independently of that agreement. *See Kramer*, 705 F.3d at 1131 ("[T]he correct analysis is whether Plaintiffs would have a *claim* independent of the existence of the Purchase Agreement . . . ." (emphasis in original)).

BMW NA also points out that the Lease Agreement references the express warranty underlying Chen's claims. *See* Lease Agreement § 16 ("If the Vehicle is new, the Vehicle is subject to the standard manufacturer's new vehicle warranty."). BMW NA contends that the express warranty is a term of the contract, and that Chen should not be permitted to sue for breach of that term while avoiding his own obligations under the Lease Agreement. *See* Reply at 8-10. BMW

8

NA's argument is not convincing. While the Lease Agreement mentions BMW NA's new vehicle warranty, it explicitly provides that the lessor "**MAKES NO WARRANTIES OR REPRESENTATIONS, EITHER EXPRESS OR IMPLIED, AS TO THE VEHICLE OR ANY OF ITS PARTS OR ACCESSORIES**" and "**MAKES NO WARRANTY OF MERCHANTABILITY OR FITNESS OF THE VEHICLE FOR ANY PARTICULAR PURPOSE**." Lease Agreement § 16 (emphasis in original). The fact that the Lease Agreement "expressly differentiate[s] dealer warranties from manufacturer warranties" only serves as evidence that Chen's warranty claims against BMW NA arise independently of the Lease Agreement. *See Kramer*, 705 F.3d at 1131.

Additionally, "many of the California cases permitting non-signatories to compel arbitration under an equitable estoppel theory involve contract-based causes of action, such as tortious interference or breach of contract." *Murphy*, 724 F.3d at 1231 n. 7. Applying the doctrine of equitable estoppel is "particularly inappropriate where plaintiffs seek the protection of consumer protection laws against misconduct that is unrelated to any contract except to the extent that a customer service agreement is an artifact of the consumer-provider relationship itself." *Id.*; *see also Nation*, 2020 WL 7868103, at *3 ("The Ninth Circuit has long held that car manufacturers like BMW NA cannot enforce similar arbitration provisions in contracts between consumers and car dealers against plaintiff consumers where the plaintiff is not seeking to enforce a term of the contract." (citing cases)). Here, Chen is asserting breach of warranty claims under federal and California consumer protection laws. He is not alleging breach of the Lease Agreement against either BMW NA or Stevens Creek BMW. Thus, the Lease Agreement is at most tangentially connected with Chen's claims. *See Kramer*, 705 F.3d at 1132 ("In order for [the manufacturer's] equitable estoppel argument to succeed, Plaintiffs' claims themselves must intimately rely on the existence of the Purchase Agreements, not merely reference them."); *see also Zamora*, 2020 WL 5219565, at *3 ("The mere fact that Plaintiff took possession of her vehicle through the Lease Agreement does not make her warranty claims 'intimately founded in and intertwined with' the Lease Agreement.").

Finally, BMW NA's reliance on *Felisilda v. FCA US LLC* is unavailing. *See* 53 Cal. App.

9

5th 486, 490 (Nov. 24, 2020). The plaintiffs in that case brought claims against both the dealership and the automobile manufacturer, and the court found that they had "expressly agreed to arbitrate claims arising out of the condition of the vehicle – even against third party nonsignatories to the sales contract . . . ." *Id.* at 497. Here, by contrast, the court has already found that Chen did not expressly agree to arbitrate his claims against BMW NA as a nonsignatory.

For all of the above reasons, the court rejects BMW NA's argument that it can compel arbitration through equitable estoppel.

## IV. CONCLUSION

For the reasons stated above, BMW NA's motion to compel arbitration is denied.

**IT IS SO ORDERED.**

Dated: August 13, 2021



Donna M. Ryu
Judge Donna M. Ryu
United States Magistrate Judge